UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**ABIGAIL SOWELL,**

    **Plaintiff,**

v.                                                         Case No. 3:12cv226-MCR/EMT

**GEICO CASUALTY INSURANCE**
**COMPANY,**

    **Defendant.**
_____/

## ORDER

    A jury trial is scheduled to begin in this third-party bad-faith insurance suit on Monday, June 22, 2015.  A pretrial conference was held on June 11, 2015, during which the Court took under advisement two outstanding legal issues raised in the Pretrial Stipulation and Trial Briefs (docs. 194, 196, 199), as well as three motions in limine (docs. 182, 187, 188).  Now, having carefully reviewed the issues and the parties' arguments, the Court rules as follows.

    1.    <u>Defendant's Third Affirmative Defense.</u>

    The Complaint alleges bad faith by the Defendant in failing to accept reasonable offers and opportunities to settle the insured's claim within policy limits when the claim could or should have settled; failing to give due consideration to the insured's interests; failing to advise the insured of a conflict of interest; failing to advise the insured of opportunities to settle within policy limits or the probable outcome of litigation; and negligence in handling the investigation, evaluation, negotiation and settlement of the claim.  Defendant's Third Affirmative Defense asserts that, under the totality of the circumstances, Defendant did not have a realistic opportunity to settle within the policy limits.  Defendant now argues that its Third Affirmative Defense is in essence merely a general denial of Plaintiff's claim, which leaves the burden of proof with Plaintiff.  Plaintiff

disagrees and argues that under Florida law, a defendant always bears the burden to prove a defense, regardless of whether or not it is considered an affirmative defense. Defendant also seeks to prove that Plaintiff was unwilling to settle. Plaintiff argues Defendant did not raise "unwillingness to settle" as an affirmative defense, and therefore, should not be permitted to pursue the defense at trial.

A defense that merely points out a defect in the plaintiff's *prima facie* case is a denial not a true affirmative defense. *In re Rawson Food Serv., Inc.,* 846 F.3d 1343, 1349 (11th Cir. 1988) (recognizing that a defense that merely points out a defect in the plaintiff's *prima facie* case is a denial not a true affirmative defense). To establish a *prima facie* case for bad faith under Florida law, the plaintiff must prove that the insurance company failed to settle when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for the insured's interests. *See* Fla. Pattern Civil Instruction 404.4; *see also Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (stating that the insurer's duties in handling a claim against an insured include acting with diligence and care, investigating and giving fair consideration to a settlement offer, and also advising the insured of matters such as settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment). The plaintiff does not have to prove that an offer of settlement was made or that the claim definitely would have settled within policy limits, but only that it could have settled under the totality of the circumstances. *See Powell v. Prudential Property & Cas. Ins. Co.*, 584 So. 2d 12, 14 (3d DCA 1991). Questions about whether a case could have settled are resolved in favor of the insured, *see Snowden v. Lumbermens Mut. Cas. Co.*, 358 F. Supp. 2d 1125, 1128 (N.D. Fla. 2003), unless the insurance company proves there was "no realistic possibility of settlement within policy limits," *Powell*, 584 So. 2d at 14. Also, "Florida law treats the unwillingness of a victim to settle as a defense which the insurer must prove." *Snowden*, 358 F. Supp. 2d at 1128.

The Court concludes on the facts at issue in this case that Defendant's Third Affirmative Defense is not a mere denial of the Plaintiff's *prima facie* burden to show that the case *could* have settled. Even assuming the case could or should have settled or that

there were multiple deficiencies in the claims handling process, the Defendant could avoid liability by proving that there was no realistic possibility of settlement within policy limits due to Plaintiff's unwillingness to settle. *See Snowden*, 358 F. Supp. 2d at 1128. Defendant relies on two recent unpublished cases from the Middle District of Florida for the proposition that its Third Affirmative Defense is not a true affirmative defense. *See Cadle v. Geico*, No. 6:13cv 1591, 2014 WL 793339, at *3 (M.D. Fla. Feb. 27, 2014) (observing that the defenses of no realistic opportunity to settle and the plaintiff's unwillingness to settle within policy limits are not true affirmative defenses but rather denials of the allegations in the complaint and thus should not be stricken as factually unsupported); *Batchelor v. Geico Cas. Co.*, 6:11cv1071, 2014 WL 7224619, at *9 (M.D. Fla. Dec. 17, 2014) (denying summary judgment to plaintiff on affirmative defenses that the insurer had no realistic opportunity to settle and the plaintiff was unwilling to settle, finding them to be simple denials of the plaintiff's *prima facie* case). The Court respectfully disagrees with these decisions. They include little analysis, and the Court finds instead that *Snowden* is more in line with Florida law. *See Snowden*, 358 F. Supp. 2d at 1128-29 (stating that, under Florida law, the unwillingness of a victim to settle is a defense to be proved by the insurer; "the insurer has the burden to show that there was no realistic possibility of settlement within policy limits") (internal marks omitted); *see also Barry v. Geico Gen. Ins. Co.*, 938 So. 2d 613, 618 (Fla. 4th DCA 2006) (finding an unwillingness to settle relevant to the defense of whether there was no realistic opportunity to settle).

While the Court agrees with Plaintiff that the burden of proving this affirmative defense is on the Defendant, the Court disagrees with the argument that Defendant should be precluded from proving Plaintiff was unwilling to settle because this was not sufficiently pleaded. The Court finds that on the facts at issue in this case, an alleged unwillingness to settle is fairly subsumed within the Third Affirmative Defense. Florida case law recognizes that, although the focus of a bad faith claim is on the insurer's conduct, the defense that there was "no realistic opportunity to settle" may include facts showing that a plaintiff was *unwilling* to settle for policy limits. *See Barry*, 938 So. 2d at 618. Although in *Cadle* and *Batchelor*, "no realistic opportunity to settle" and an "unwillingness to settle"

were listed by the defendant as separate affirmative defenses in the answer, the cases do not require this, and in any event, in this case, the time for challenging the sufficiency of pleadings, or their factual basis, has long since expired. The record shows that Plaintiff has known of the factual basis for the Third Affirmative Defense, i.e. that there was no realistic opportunity to settle because of her alleged unwillingness to settle, since at least the time Defendant filed its summary judgment motion, in which it plainly set forth this position. Thus, the defense is not being raised for the first time at trial. Defendant will bear the burden of proof on the issue, consistent with Florida law.

  2. Causation Instruction

  Defendant has proposed the following instruction on causation as Special Jury Instruction Number Seven: "The damages claimed by an insured, or its assignee, must be caused by the insurance company's bad faith, and absent the existence of this causal connection, the insurance company cannot be found to have acted in bad faith." Plaintiff argues that a causation instruction is not appropriate in the context of this case because the jury will not be asked to decide the issue of damages. The Court agrees. The Notes to Florida Pattern Jury Instruction 404.6, which requires proof of legal causation in a bad faith context, states that the instruction "is to be given in all cases in which the issue of damages is submitted to the jury," but "[n]o part of this instruction should be given if the court is going to determine damages." While it is true that the jury must determine damages and causation in cases where no excess judgment exists, *see Perera v. United States Fidelity & Guaranty Co.*, 35 So. 3d 893, 902 (Fla. 2010) (stating an excess judgment is not always a prerequisite to bringing a bad faith suit but the damages claimed must be caused by the insurer's bad faith), in this bad faith case, an excess judgment exists and that judgment will serve as the measure of damages if Plaintiff prevails in proving bad faith. Thus, there is no need for the jury to determine damages.[1] To the extent there will be

---

[1] Also, by way of example, although there is an affirmative defense that allows the jury to consider the Plaintiff's unwillingness to settle, the law does not permit the jury to engage in any type of comparative bad faith analysis based on the plaintiff's conduct that could allow the jury to reduce the amount of the excess judgment. *See Nationwide Prop. & Cas. Ins. Co. v. King*, 568 So. 2d 990, 990-91 (Fla. 4th DCA 1990).

issues of setoff, attorney's fees or costs, they will be decided by the Court.  Defendant's Special Jury Instruction Number Seven will not be given.

### 3. PIP Insurance and Uninsured Motorist Claim (doc. 182)

Plaintiff filed a motion in limine requesting the Court preclude Defendant from offering evidence of its handling of her PIP Insurance and Uninsured Motorist claim. According to Defendant, the evidence is relevant to demonstrate that Plaintiff did not make knee complaints initially following the accident and that her expected expenses were first approximated at only $1,000 to $2,000.  The Court disagrees.  Defendant's adjusters did not reference these files or consider this information, which was unavailable to them when they were evaluating Karen Reed's claim and deciding whether to offer to settle under Reed's policy.  Also, the PIP Insurance and Uninsured Motorist claim were subject to different standards than the issues considered by Defendant when it evaluated Reed's claim.  *See generally Altheim v. Geico Gen. Ins. Co.*, 8:10cv156-T-24 TBM, 2011 WL 1429735, at *7 (M.D. Fla. Apr. 14, 2011) (noting that a PIP claim and underinsured motorist claim involve "quite different" standards, considerations, and principles).  Thus, the Court finds that this evidence is not relevant to the determination of whether Defendant acted in bad faith in relation to the Reed policy.  There may be relevant portions of the Uninsured Motorist claim file, however, to the extent Defendant shows that the file included information that Plaintiff withheld from the Reed policy claims adjusters.  The motion will be conditionally granted, without prejudice to Defendant making a proffer outside the presence of the jury to establish the relevance of portions of the Uninsured Motorist file.

### 4. Timing of Records as Evidence of "Setup" (doc. 187)

Plaintiff seeks to preclude Defendant from eliciting testimony and introducing documents regarding the timing and manner in which Plaintiff's Panhandle Orthopedic treatment records came into the possession of her attorney, Brent Bradley, as evidence that she and Bradley attempted to "setup" a bad faith claim by omitting important records from Plaintiff's settlement demand for the purpose of later claiming Defendant acted in bad faith.  Plaintiff argues this evidence is not relevant and invites speculation because there

is no affirmative defense of "setup" or proof by virtue of a mere facsimile strip that Bradley was in possession of the records when he mailed the settlement demand to Defendant or that he intended to conceal the records to setup a bad faith claim. Plaintiff also argues that any relevance is outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Although "setup" is not a recognized affirmative defense and has not been pleaded, Defendant states this evidence is probative of the totality of the circumstances and Plaintiff's unwillingness to settle within policy limits, which is at issue. The Court agrees that, to the extent the evidence shows Plaintiff was obtaining orthopaedic treatment but not disclosing it, a jury could infer she was unwilling to settle for policy limits. However, any specific reference to Plaintiff and her attorney devising a "setup" will be prohibited as unfairly prejudicial, and speculative state of mind testimony will also be prohibited. *See Hayas v. Geico*, 2014 WL 5590808, at **3-4 (M.D. Fla. 2014) (finding lay or expert opinion testimony about an unwillingness to settle would be admissible if based on actions or observations during the pendency of the matter but not speculation as to intent or thought process); *Altheim,* 2011 WL 1429735, at *2 (denying a motion in limine without prejudice as to "state of mind" evidence regarding the plaintiff's willingness to settle). This motion is granted in part and denied in part without prejudice to objections raised in context at trial.

     5.     <u>Reservation of Rights/Lack of Cooperation (doc. 188)</u>

Plaintiff argues that the Court should preclude argument or evidence regarding letters from Defendant to it's insured, Ms. Reed, (Defense Exs. 2, 61, 68, 71, 72, 73, and 77) reserving its rights or referring to her lack of cooperation. Plaintiff asserts the letters are irrelevant or unfairly prejudicial because the Defendant had no defense against liability and the insured's cooperation is not at issue. Plaintiff points out that as early as January 12, 2009, Defendant had determined Reed was at fault, and that, although the letters reveal that Defendant had some difficulties communicating with Reed, Reed did in fact cooperate with Defendant. Defendant responds that the letters are relevant under the totality of the circumstances standard. The Court agrees with Defendant that the evidence is relevant under this standard and not unfairly prejudicial. *See Berges*, 896 So. 2d at 680

("[b]ad faith in handling claims . . . is determined under the 'totality of the circumstances' standard"). Therefore, the motion will be denied without prejudice to renewal in context at trial.

Accordingly:

1. Defendant will bear the burden of proof on the Third Affirmative Defense.

2. Defendant's Special Jury Instruction Number Seven will not be given.

3. Plaintiff's First Motion in Limine (doc. 182) is **CONDITIONALLY GRANTED** without prejudice to Defendant laying a proper foundation for relevance during trial.

4. Plaintiff's Sixth Motion in Limine (doc. 187) is **GRANTED in part and DENIED in part**, without prejudice to objections in context during trial.

5. Plaintiff's Seventh Motion in Limine (doc. 188) is **DENIED** without prejudice to renewal during trial.

**DONE AND ORDERED on this 20th day of June, 2015.**


*M. Casey Rodgers*
**M. CASEY RODGERS
CHIEF UNITED STATES DISTRICT JUDGE**